## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

PETER ANTHONY GRANDPRE, JR.                    CIVIL ACTION

VERSUS                                         NO.   16-1543

CORRECT HEALTH, ET AL                          SECTION "F"(4)

## REPORT AND RECOMMENDATION

Before the Court are the following matters: **Motion to Dismiss (Rec. Doc. No. 6)** filed by defendant CorrectHealth Jefferson, LLC; **Motion to Dismiss Pursuant to Fed. Rule Civ. P. 12(B)(4) & (5) (Rec. Doc. No. 9)** filed by defendants Dana McLondon, LRN Toni and LRN James; **Motion to Dismiss (Rec. Doc. No. 10)** filed by defendant Kelly Harris.   These motions and the underlying matter were referred to a United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to **28 U.S.C. § 636(b)(1)(B) and (C), § 1915e(2), and § 1915A**, and as applicable, **42 U.S.C. § 1997e(c)(1) and(2)**.   On April 8, 2016, the Court conducted a hearing pursuant to *Spears v. McCotter*,[1] and its progeny, with the plaintiff and counsel for the defendants participating by conference telephone call.[2]   Upon review of the entire record, the Court has determined that the motions and this matter can be disposed of without an evidentiary hearing.

---

[1] 766 F.2d 179 (5th Cir. 1985).   The purpose of the *Spears* Hearing is to ascertain what it is the prisoner alleges occurred and the legal basis for the claims.   The information received is considered to an amendment to the complaint or a more definite statement under Fed. R. Civ. P. 12(e).   *Wilson v. Barientos*, 926 F.2d 480, 482 (5th Cir. 1991).

[2] Rec. Doc. No. 11.   The plaintiff was sworn prior to testifying and the hearing was digitally recorded.

I.      **Factual and Procedural Background**

A.      **The Complaint**

The plaintiff, Peter Anthony Grandpre, Jr. ("Grandpre"), is an inmate housed in the Jefferson Parish Correctional Center ("JPCC") in Gretna, Louisiana.   Grandpre filed this *pro se* and *in forma pauperis* complaint under 42 U.S.C. §1983 against the defendants, CorrectHealth Jefferson, LLC, ("CorrectHealth"), Cindi Lachney, Kelly Harris, Dana McLondon, LRN Toni, and LRN James, asserting that he was denied adequate medical care.

Grandpre alleges that, on April 25, 2015, he reported that he slipped in water on the floor of his cell and called for medical help.   The defendant, Nurse James, arrived accompanied by two deputies.   He borrowed a black flashlight from one deputy and asked the deputies to hold Grandpre's legs.   Nurse James then proceeded to cut the bottom of Grandpre's left foot until it bled.   As a result of his injuries, Grandpre claims that he filed numerous medical care request forms to see a doctor.   When his requests were denied, he filed an administrative grievance.

Grandpre also claims that, on the same day, he was choked with two hands by a deputy in front of Nurse Dana McLondon and Nurse Toni and nothing was done.

Beginning May 8, 2015, Grandpre alleges that he noticed blood in his stool and bleeding in his rectum area.   The deputies on the pod had him sent to the medical department where he was seen by Nurse Dana.   She placed him on medication and did nothing else.

Grandpre further claims that after this incident, he wrote his attorney to complain that he had not seen a doctor for medical care since the April 25, 2015, injury to his foot.   He was seen on June 5, 2015, which was two days after his attorney wrote a letter to the prison.   He was seen that day by a doctor from CorrectHealth at the JPCC about the blood in his stool.   He alleges that the doctor ordered blood work, stool samples and set a follow-up appointment on August 3, 2015.

When Grandpre was seen on August 3, 2015, he reported continued problems with rectal bleeding.   Grandpre also told the doctor that the medication he was taking did not agree with him. Grandpre claims that the doctor reordered the blood work and stool samples.

Grandpre claims that, on August 15, 2015, he had a medical emergency arise and asked to be seen by the medical staff.   Nurse Dana told the deputy to have Grandpre complete a sick call request.   Upon receiving the message from the tier deputy, Grandpre asked the deputy to call the medical department again and tell them that his medical information was confidential.   His request to be seen was denied.   When he was finally taken to the medical unit that afternoon, Nurse Dana did the blood work and had Grandpre returned to his cell.   Two days later, he filed a grievance complaint to complain about the medical department.

Grandpre further alleges that, on December 18, 2015, he visited with a doctor by video and was informed that blood was found in his stool.   The doctor advised him that he would be given medication for heartburn.   Grandpre states that he told the doctor he did not have heartburn.   The doctor told Grandpre he would be referred to a specialist.

As a result of the foregoing, Grandpre seeks monetary damages for his physical and emotional injury, pain, and losses.

Attached to Grandpre's complaint are several administrative grievance complaints referenced in the complaint.   A review of these documents reflects that, on August 15, 2015, Grandpre lodged two complaints against deputies related to the disclosure of his medical information and the requirement that he complete a sick call complaint when he intended to declare

a medical emergency.[3]   The Grievance No. 1508062 indicates that it was "refused."[4]   The response to Grievance No. 1508064 indicates that his claims were unfounded.[5]

On August 17, 2015, Grandpre complained in one grievance that a deputy improperly refused to call for a nurse and threatened him if he continued to ask.[6]   This complaint was marked "refused."[7]

That same day, Grandpre complained in another grievance about the treatment for his complaints of blood in his stool, his dislike for the medication prescribed, and the delayed testing.[8] This complaint was also "refused."[9]

In a third grievance filed August 17, 2015, Grandpre complained that he was not receiving adequate care for his rectal bleeding.[10]   In a response dated September 4, 2015, defendant Kelly Harris responded indicating that Grandpre was being repeatedly seen by the chronic care doctor for his complaints and that Grandpre was refusing to provide the necessary stool samples for testing.[11]

---

[3]Rec. Doc. No. 1-1, pp. 4-7 (Nos. 1508062, 1508064).

[4]Rec. Doc. No. 1-1, p. 6.

[5]Rec. Doc. No. 1-1, p. 14.

[6]Rec. Doc. No. 1-1, pp. 8-9 (No. 1508052).

[7]Rec. Doc. No. 1-1, p. 8.

[8]Rec. Doc. No. 1-1, pp. 10-11 (No. 1508053).

[9]Rec. Doc. No. 1-1, p. 10.

[10]Rec. Doc. No. 1-1, pp. 1-2 (No. 1508070).

[11]Rec. Doc. No. 1-1, p. 3.

In another grievance, dated May 6, 2015, Grandpre claimed that he slipped and fell on April 25, 2015, and needed to see a doctor.[12]   The response from defendant Cindi Lachney indicated that Grandpre was seen for his complaints on April 30, 2015, and was continuing to be seen for a preexisting back and neck injury.[13]

### B.    The *Spears* Hearing[14]

Grandpre testified that he is a pretrial detainee awaiting trial on drug charges following his arrest on January 15, 2015.   He further testified that, on April 25, 2015, he got out of his bunk to get ready for roll call and slipped on the wet floor of his cell, causing him to reinjure his back and neck.   At the time, he was on administrative lockdown.   His cellmate called for the deputies on the tier.   Sergeant Barrion, Deputy A. Siv, Deputy McGinney, Deputy Parker, and Nurse James entered the cell and told him to get up.   When he told them that he could not, Nurse James had the deputies hold Grandpre down, and he used a flashlight with spikes to push on the bottom of Grandpre's foot.   Grandpre resisted when the flashlight cut into his foot.   Grandpre claimed that the bottom of his foot began to bleed.   The deputies then placed him on the bunk and Nurse James tried to take his blood pressure.   Grandpre said he became aggravated and resisted the nurse's efforts.   The deputies then applied force to hold him down.   After Nurse James left the cell, Sergeant Barrion had him moved to another cell where he was placed on a bunk with no mattress. Grandpre pulled on Barrion's arm and asked for help, and Barrion's elbow hit Grandpre in the nose when he pulled his arm away.

---

[12]Rec. Doc. No. 1-1, p. 12 (No. 1505026).

[13]Rec. Doc. No. 1-1, p. 13.

[14]The Court notes that Grandpre has filed a separate suit, Civ. Action No. **Error! Main Document Only.**16-1541"J"(4), against the officers and deputies mentioned in his claims and any claims against them are not before the Court in the instant case.

Grandpre further stated that other inmates noticed that he was bleeding from the nose and called for help.   Nurse Toni (whose last named was identified by Grandpre as Carter), Nurse Crystal, Sergeant B. Lee and Sergeant Barrion returned to see him.   The nurses cleaned his face and took notes about the incident.   Grandpre stated that he asked for pain medication, and the nurse told him to wait for his regular pain medication.

Grandpre stated that he remained in cell four and was not returned to cell nine where he had been.   When he was allowed his one hour out of the cell, he limped to the table and told the tier deputy he wanted to see someone from the Security Investigation Unit ("SIU") or a ranking officer other than Sergeant Barrion.   He was told no one would see him and he then refused to return to his cell.   Soon, Sergeant Barrion, Deputy McGinney, Deputy Siv, and Deputy E. Glade arrived to get Grandpre back to his cell.   Grandpre told the officers he was in pain and had copies of his medical records to show them.   Sergeant Barrion refused to look at them.   As Grandpre continued to complain and limp to his cell.   He claims that the Sergeant snatched the records, threw them on the floor, and stepped on them.   He then punched Grandpre in the face.   The other deputies then dove on him and pushed him onto the bunk.   Grandpre claimed that the officers pulled his arms back, locked his legs with a night stick, and held him down with their knees on his back.   He was placed in handcuffs, which were so tight they caused his wrists to swell and bruise. Deputies E. Glad and McGinney then escorted him me out of the cell to take him to the medical unit.   Grandpre complained that his arm was hurt and, at some point, Deputy McGinney slammed him against the wall.   Deputy Siv then choked Grandpre by the neck and Grandpre pulled the food cart over.   At that time, Deputy Siv punched Grandpre.

Grandpre claimed that Sergeant Barrion and Deputy Glade stood by watching and did not stop the other deputies.   Grandpre stated that he threatened Sergeant Barrion with a lawsuit, and the Sergeant dismissed the warning.

On the way to the medical unit, Grandpre stated that the deputies told him to face the back of the elevator.   Grandpre was aggravated so he did not turn all the way.   Deputy Siv then forcibly turned his head causing his face to hit the wall injuring his mouth.

In the medical unit, he was seen by Nurse Dana and Nurse Toni.   While they tried to take his blood pressure, he told the nurses that Deputy Siv "hit like a bitch."   The deputy then choked Grandpre in front of the nurses, and no one tried to stop him.

Grandpre further stated that, later during pill call, he told Deputy Jones that he did not feel safe on the pod because of the other officers.   Nurse Dana also saw him during pill call and told Grandpre that, after pill call she would give him an ice pack and Tylenol.   When Deputy Jones brought him to medical, she gave him the ice pack and Tylenol and told me to fill out sick call for other injuries.

On the way back to his cell, Grandpre again told Deputy Jones that he did not feel safe. Because he was already on administrative lockdown, the only other place he could go would be suicide watch.   After convincing Deputy Jones to call, a doctor came up to see Grandpre and had him placed on suicide watch.   Grandpre stated that he was stripped naked and placed in another cell where he remained until for about three days until Monday evening.   He was checked by the nurse on Saturday, April 26, 2015, and he explained that he was not suicidal.

On April 28, 2015, he completed a sick call form requesting to see a doctor for his injuries. He testified that he also filed grievances on April 30, May 1, and May 5, 2015.   He stated that each of his grievances was refused because the matter was being investigated by SIU due to the

related disciplinary charges placed against him.   Grandpre conceded that he did not seek review of the denial of any of his grievances.

Grandpre stated that he did not hear back from SIU about the investigation even after he wrote a letter to them.   He also indicated that he was interviewed by a detective and Ms. Emanuel from SIU on June 26, 2015.   On August 5, 2015, Ms. Emanuel advised Grandpre that the incident was handled by SIU but she could not tell him what happened.

Grandpre further stated that in response to his sick call request on April 28, 2015, a doctor wrote that he would be seen at a later time.   After his lawyer wrote to the Warden, Grandpre was examined by a prison doctor on June 5, 2015.   The doctor examined him, and she took notes. Grandpre also advised her that, after the beating, he began to experience rectal bleeding when he used the bathroom.   The doctor gave him stomach medicine and told him he would be seen by another doctor for that problem.

Grandpre stated that he saw another doctor on July 6, 2015, and the doctor ordered blood work and stool samples and set a follow up appointment for August 3, 2015.   At that appointment, Grandpre advised the doctor that he was still bleeding and that no tests were done.   He also told him that the medication he was given "did not agree with my body."   The doctor reordered the blood work and stool samples.

Later, on August 15, 2015, Grandpre declared an emergency when he began freely bleeding from his rectum while using the bathroom.   He did not want to tell the deputy what was wrong so he just asked that the nurse be called.   He was told to complete a sick call form.   After he finally decided to tell the deputy he was bleeding, Nurse Dana came up to see him.   She drew blood and gave him the stool sample cups he needed.

Grandpre stated that he was never given a diagnosis.   He eventually saw the doctor again on December 18, 2015, but nothing more was done about his bleeding.   He filed grievances with the prison to no avail.   He stopped taking the medication for his stomach because it was not working.   Grandpre also indicated that he was taken for a colonoscopy on April 7, 2016, prior to the *Spears* Hearing.   The doctor told him that they did not find anything except a small hemorrhoid.   He otherwise was healthy.   Grandpre stated that he occasionally still has a little bleeding but nothing like it was in the past.

Grandpre testified that he sued CorrectHealth as the employer of the Nurse James who cut his foot.   He also named Nurse James for that incident.

He stated that he named Cindi Lachney, a doctor or nurse practitioner at the prison, because she denied his grievance request after his fall because he had been seen by medical personnel and was being treated for his injuries.   He indicated that he did not like her response or the fact that she did not refer him to a medical doctor for further treatment.

He also sued Kelly Harris claiming that she falsified a grievance response when she indicated he refused to provide the stool samples needed for testing ordered by the doctor.

Grandpre stated that he sued Dana McLondon, because she did not immediately provide him with medical treatment when he first had rectal bleeding.   He also alleges that she watched him get choked by a deputy and did nothing to stop it.   Similarly, he sued Nurse Toni Carter because she did not accurately report his medical complaints after the incident on April 25, 2015, and she saw him get choked by a deputy without doing anything to stop it.

C.   **Amended and Supplemental Complaint (Rec. Doc. No. 16)**

In his amended and supplemental complaint, Grandpre reiterated the facts and allegations outlined in the original complaint and at the *Spears* Hearing.   In addition, he indicates that he was

taken for x-rays on July 11, 2015, related to the incident on April 25, 2015.   He complains, however, that he was not physically examined for internal injuries that may have occurred to cause his rectal bleeding.   He mentions for the first time that he consulted with a doctor by video at the prison on March 23, 2016, about his rectal bleeding.   He was then advised of his scheduled colonoscopy for April 7, 2016.   Grandpre also restates his challenges to the veracity of the grievance responses filed by the medical personnel as discussed in the complaint and at the *Spears* Hearing.

### D.   Defendants' Motions to Dismiss (Rec. Doc. Nos. 6, 9, 10)

The Court has before it three motions to dismiss filed by the various defendants.   A summary of each motion follows.

### 1.   Motion by CorrectHealth (Rec. Doc. No. 6)

CorrectHealth asserts that Grandpre's claims if any against it should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) because he has failed to establish a deliberate indifference to his serious medical needs as a result of a CorrectHealth policy, practice, or custom.   In addition, CorrectHealth asserts that Grandpre cannot impute liability to CorrectHealth based on the alleged actions of its employee, specifically the defendant identified as LRN James.   CorrectHealth further asserts that the medical records do not reflect that Grandpre's foot was cut although it recognizes that a nurse did engage in the common neurological procedure of rubbing a sharp object on the bottom of the foot as described by Grandpre.[15]

Although the motion is submitted under Rule 12(b)(6), CorrectHealth submitted uncertified and non-sequential copies of Grandpre's JPCC medical records to support its suggestion that Grandpre was provided with adequate medical care by its employees.

---

[15]*See* Rec. Doc. No. 18, pp. 2-3.

CorrectHealth supplemented its motion with additional medical record exhibits for the purpose of further establishing that Grandpre continued to receive proper medical care for his complaints.[16] CorrectHealth argued further that Grandpre would not be able to assert a civil rights violation based on LRN James's alleged "bad temper" and inappropriate comments as a separate claim from the alleged cutting of Grandpre's foot.

### 2.    Motion by McLondon, LRN James, and LRN Toni (Rec. Doc. No. 9)

The defendants, McLondon, LRN James, and LRN Toni, seek dismissal of the complaint against them under Fed. R. Civ. P. 12(b)(5) as to all three and additionally under Fed. R. Civ. P. 12(b)(4) as to LRN James and LRN Toni.   The defendants assert that the summons was not properly served upon them in accordance with state or federal rules because delivery of the summons was made at their place of business upon a supervisor, Kelly Harris.   In addition, as to LRN James and LRN Toni, neither the summons nor the complaint properly name them as the names used by plaintiff are insufficient.

### 3.    Motion by Kelly Harris (Rec. Doc. No. 10)

Harris seeks dismissal of Grandpre's claims against her under Fed. R. Civ. P. 12(b)(6) for failure to state a claim for which relief can be granted.   Harris represents that she is the Health Services Administrator for CorrectHealth.   Harris asserts that Grandpre does not allege that he received any medical care from Harris or that he had any interaction with her.   Further, she argues that her role as respondent in the grievance process is not a basis for a civil rights claim.[17]

---

[16]Rec. Doc. No. 18.
[17]*See* Rec. Doc. No. 20.

## II.   **Standards of Review**

### A.   **Review for Frivolousness**

Pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A and 42 U.S.C. § 1997e(c), the Court is required to *sua sponte* dismiss cases filed by prisoners proceeding *in forma pauperis* upon a determination that they are frivolous.   The Court has broad discretion in determining the frivolous nature of the complaint.  *See Cay v. Estelle*, 789 F.2d 318 (5th Cir. 1986), *modified on other grounds*, *Booker v. Koonce*, 2 F.3d 114 (5th Cir. 1993).   However, the Court may not *sua sponte* dismiss an action merely because of questionable legal theories or unlikely factual allegations in the complaint.

Under this statute, a claim is frivolous only when it lacks an arguable basis either in law or in fact.  *Neitzke v. Williams*, 490 U.S. 319 (1989); *Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir. 1998).   A claim lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist. *Harper v. Showers*, 174 F.3d 716, 718 (5th Cir. 1999).   It lacks an arguable factual basis only if the facts alleged are "clearly baseless," a category encompassing fanciful, fantastic, and delusional allegations. *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992); *Neitzke*, 490 U.S. at 327-28. Therefore, the Court must determine whether the plaintiff's claims are based on an indisputably meritless legal theory or clearly baseless factual allegations.   *Reeves v. Collins*, 27 F.3d 174, 176 (5th Cir. 1994); *see Jackson v. Vannoy*, 49 F.3d 175, 176-77 (5th Cir. 1995); *Moore v. Mabus*, 976 F.2d 268, 269 (5th Cir. 1992).

### B.   **Review for Motions to Dismiss under Fed. R. Civ. P. 12(b)(6)**

In considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court must accept as true all well-pleaded facts and must draw all reasonable inferences from those allegations in the

plaintiff's favor.   *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 803 n. 44 (5th Cir.

2011) (citing *True v. Robles*, 571 F.3d 412, 417 (5th Cir. 2009); *Baker v. Putnal*, 75 F.3d 190, 196

(5th Cir. 1996).   To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough

facts to state a claim to relief that is plausible on its face."   *Bell Atlantic Corp. v. Twombly*, 550

U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Harold H. Huggins Realty,*

*Inc.*, 634 F.3d at 796.   "Factual allegations must be enough to raise a right to relief above the

speculative level on the ASSUMPTION THAT ALL THE allegations in the complaint are true

(even if doubtful in fact)." (uppercase and parenthetical in original) *Id.*, 550 U.S. at 555-56

(quotation marks, citations, and footnote omitted).   Plausible grounds "simply calls for enough

fact to raise a reasonable expectation that discovery will reveal evidence" to support the claim.

*Id.*, 550 U.S. at 556.   "And, of course, a well-pleaded complaint may proceed even if it strikes a

savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and

unlikely.'"   *Id.* (quoting *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 515 (2002)).

In resolving the motion, the court is generally limited to considering only those allegations

appearing on the face of the complaint and its proper attachments.   *Walch v. Adjutant General's*

*Dep't*, 533 F.3d 289, 293 (5th Cir. 2008).   However, matters of public record, orders, items

appearing in the record of the case and exhibits attached to the complaint may be taken into

account. *Chester County Intermediate Unit v. Pennsylvania Blue Shield,* 896 F.2d 808, 812 (3rd

Cir. 1990).   "Documents that a defendant attaches to a motion to dismiss are considered part of

the pleadings if they are referred to in the plaintiff's complaint and are central to [the] claim."

*Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F. 3d 285, 288 (5th Cir. 2004) (citing *Collins v.*

*Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000)).   While conclusory

allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent the

granting of a Rule 12(b) motion to dismiss, such motions are viewed with disfavor and are rarely granted. *Lowrey v. Texas A & M Univ. Sys.*, 117 F.3d 242, 246 (5th Cir. 1997).

Further, the United States Fifth Circuit Court of Appeals has held that, when reviewing *pro se* complaints, the court must employ less stringent standards, look beyond the inmate's formal complaint and consider material subsequently filed as amendments to that complaint. *Howard v. King*, 707 F.2d 215 (5th Cir. 1983); *see also Haines v. Kerner*, 404 U.S. 519 (1972). In the prisoner context, in *Taylor v. Gibson*, 529 F.2d 709 (5th Cir.1976), the Court explained:

> It is the responsibility of the courts to be sensitive to possible abuses [in the prison systems] in order to ensure that prisoner complaints, particularly pro se complaints, are not dismissed prematurely, however unlikely the set of facts postulated. An opportunity should be provided the prisoner to develop his case at least to the point where any merit it contains is brought to light.

*Id.*, 529 F.2d at 713-14; *see also Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

### C. Motion to Dismiss Under Fed. R. Civ. P. 12(b)(4)&(5)

Rule 4 of the Federal Rules of Civil Procedure establishes the requirements for summons and service of process. If the plaintiff fails to comply with Rule 4, the defendant may seek dismissal of the plaintiff's claims under Fed. R. Civ. P. 12(b)(4) and/or 12(b)(5). *Gartin v. Par Pharm. Companies, Inc.*, 289 F. App'x 688, 692 (5th Cir. 2008). In resolving a motion pursuant to Fed. R. Civ. P. 12(b)(5), the Court must determine whether the summons itself is sufficient and whether service of that summons was properly made upon the defendant. Rule 12(b)(4) allows a defendant to attack the form of the process, rather than the method by which it was served. Problems of form arise, for example, where the party to be served is improperly named. *Marine Geotechnics, LLC v. Williams*, 2009 WL 2144278, at *2 (S.D. Tex. July 13, 2009); *Margetis v. Ray*, 2009 WL 464962, at *4 (N.D. Tex. Feb. 25, 2009) ("Process may be insufficient if the summons and complaint refer to a party in the wrong name.")

If the summons was not properly served on the moving defendant, the district court has broad discretion to either dismiss the plaintiff's complaint for failure to effect service or to simply quash service of process. *Francis v. Dupree*, No. 2011 WL 3818955, at *2 (E.D. La. Jul. 29, 2011) (citing *Amous v. Trustmark National Bank*, 195 F.R.D. 607, 610 (N.D. Miss. 2000). Dismissal of the complaint itself is inappropriate where there exists a reasonable prospect that service may be obtained. *Id.*

### III.    Analysis

#### A.    Frivolousness Review

Before considering the defendants' motions to dismiss, the Court is compelled to conduct its statutory review for frivolousness under 28 U.S.C. § 1915, §1915A and 42 U.S.C. § 1997e. After having the opportunity at the *Spears* Hearing and by supplemental complaint to plead his best case, Grandpre has failed to assert a non-frivolous claims against the following defendants. *See Jacquez v. Procunier*, 801 F.2d 789, 793 (5th Cir. 1986).

##### 1.    Claims against CorrectHealth

Grandpre indicated that he sued CorrectHealth as the employer of LRN James, whom he claims cut his foot during a medical test after his fall on April 25, 2015.   Thus, Grandpre made it clear at the *Spears* Hearing that his claims against CorrectHealth arise from the actions of its employee and not a policy of CorrectHealth itself.

The Court first recognizes that CorrectHealth is the private corporation contracted to operate the medical services within JPCC, and the company and its employees are subject to liability as state actors under § 1983.   *See Bishop v. Karney*, 408 F. App'x 846, 848 (5th Cir. 2011) (citing *West v. Atkins*, 487 U.S. 42, 49-50, 54-57 (1988)); *accord Filarsky v. Delia*, __ U.S. __, 132 S. Ct. 1657, (2012) (a private individual retained by the state government to carry out its work

can be sued as a state actor under § 1983); *Richardson v. McKnight*, 521 U.S. 399 (1997) (employees of a private corporation who perform traditional government functions at the prisons can be liable under § 1983). However, in this case, Grandpre cannot state a claim against CorrectHealth merely as the employer of LRN James.

Based on his statements, Grandpre seeks to hold CorrectHealth liable based on a theory of vicarious liability, which simply is not allowed in an action filed pursuant to § 1983. *See Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002); *Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir. 1987); *see also Sears ex rel. Sears v. Lee*, No. 08-3418, 2010 WL 324385, at *3-5 (E.D. La. Jan. 20, 2010); *see Watts v. Burke*, No. 15cv99, 2016 WL 1389613, at *2 (S.D. Ms. Apr. 7, 2016) (corporate prison medical service not vicariously liable for the acts of its employees). Grandpre also has not alleged that he suffered any injury directly resulting from any order, training, or other policy implemented by CorrectHealth that would create a vicarious liability under § 1983. *See Johnson v. Moore*, 958 F.2d 92, 94 (5th Cir. 1992); *Thompson v. Upshur County*, 245 F.3d 447, 459 (5th Cir. 1991); *Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987); *see also*, *City of St. Louis v. Praprotnik*, 485 U.S. 112, 124-25 (1988).

Grandpre has not alleged any act or policy of CorrectHealth which could form the basis of liability under § 1983 for the acts of LRN James or any other CorrectHealth employee. His claims against CorrectHealth must be dismissed as frivolous and otherwise for failure to state a claim pursuant to § 1915, § 1915A and § 1997e as applicable.

### 2.   Claims against Harris and Lachney

Grandpre named both Kelly Harris and Cindi Lachney as defendants because they each denied him relief when responding to his grievance complaints about his medical care. Grandpre has failed to state a non-frivolous claim against these defendants.

Inmates generally have no constitutional right under the First or Fourteenth Amendments to an effective grievance procedure.  *See Wilcox v. Johnson,* 85 F.3d 630, 1996 WL 253868 at *1 (6th Cir. May 13, 1996) (Table, Text in Westlaw); *Adams v. Rice,* 40 F.3d 72, 75 (4th Cir. 1994); *Buckley v. Barrow,* 997 F .2d 494, 495 (8th Cir. 1993); *Flick v. Alba,* 932 F.2d 728, 729 (8th Cir. 1991); *Flowers v. Tate,* 925 F.2d 1463, 1991 WL 22009 at *1 (6th Cir. Feb. 22, 1991) (Table, Text in Westlaw).   In other words, there is no constitutional guarantee that the inmate will receive a response from, or be satisfied with the responses by, the prison officials.   *Id.*

Thus, although Grandpre indicates that he was dissatisfied with the responses received from Harris and Lachney, this is not sufficient to allege a constitutional violation.   The responses did not prevent him from accessing necessary medical care through the proper medical request process.   His mere emotional frustration with the grievance system is not cognizable under § 1983.   28 U.S.C. § 1997e(e) (requiring a direct physical injury to recover for mental and emotional damages).

Grandpre's claims against Harris and Lachney are frivolous and otherwise fail to state a claim for which relief can be granted, and must be dismissed pursuant to § 1915, § 1915A, and § 1997e as applicable.

### 3.   Claims against Nurse Dana McLondon

Grandpre alleges that Dana McLondon delayed providing him with medical care when he first reported that he was bleeding from his rectum during bowel movements.   He also complains that she did not intervene when he was choked in front of her by Deputy A. Siv.

### a.   Delayed Medical Care

Claims of deliberate indifference by prison personnel to a prisoner's serious medical needs is actionable under § 1983.   *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976).   "A serious medical

need is one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required." *Gobert v. Caldwell*, 463 F.3d 339, 345 n.12 (5th Cir. 2006); *Lewis v. Evans*, 40 F. App'x 263, 264 (5th Cir. 2011).

Under *Estelle*, deliberate indifference to serious medical needs of prisoners constitutes the "unnecessary wanton infliction of pain," proscribed by the Eighth Amendment. *Estelle*, 429 U.S. at 104. This is true where the indifference is manifested by prison officials or prison healthcare providers in their response to the prisoner's needs or in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. *Id.*

A prison official is deliberately indifferent if he or she has actual knowledge of a substantial risk of harm to an inmate and disregards that substantial risk. *Farmer v. Brennan*, 511 U.S. 825, 847 (1994); *see also Parrish v. Cleveland*, 372 F.3d 294, 302 (4th Cir. 2004) (the standard of deliberate indifference requires actual knowledge and disregard of a substantial risk of serious injury); *Washington v. La Porte County Sheriff's Dep't*, 306 F.3d 515 (7th Cir. 2002) (same). In applying this standard, the courts have held that "the prisoner must show that the defendants (1) were aware of facts from which an inference of an excessive risk to the prisoner's health or safety could be drawn and (2) that they actually drew an inference that such potential for harm existed." *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998) (citing *Farmer*, 511 U.S. at 837). "Under exceptional circumstances, a prison official's knowledge of a substantial risk of harm may be inferred by the obviousness of a substantial risk." *Id.* (citing *Farmer*, 511 U.S. at 842 & n.8).

> The Supreme Court has recently reaffirmed that "deliberate indifference" is a <u>stringent</u> standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action. . . . The "deliberate indifference" standard permits courts to separate omissions that "amount to an intentional choice" from those that are merely "unintentionally negligent oversight[s]."

*Southard v. Tex. Bd. of Crim. Just.*, 114 F.3d 539, 551 (5th Cir. 1997) (citing *Bd. of County Comm'rs v. Brown*, 520 U.S. 397 (1997)) (citations omitted) (emphasis added).

Therefore, inadequate medical treatment of inmates, at a certain point, may rise to the level of a constitutional violation, while malpractice or negligent care does not. *Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir. 1999); *Mendoza v. Lynaugh*, 989 F.2d 191, 193 (5th Cir. 1993) ("It is clear that negligent medical treatment is not a cognizable basis upon which to predicate a section 1983 action."); *Williams v. Treen*, 671 F.2d 892, 901 (5th Cir. 1982) ("mere negligence in giving or failing to supply medical treatment would not support an action under Section 1983."); *see also Jackson v. Cain*, 864 F.2d 1235, 1246 (5th Cir. 1989). In addition, a prisoner's mere disagreement with medical treatment does not state a claim for Eighth Amendment indifference to medical needs. *Gobert*, 463 F.3d at 346; *Domino v. Tex. Dep't of Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001); *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997).

In this case, Grandpre alleges that McLondon did not immediately respond to his request for treatment when he first found that he had rectal bleeding. In explaining his claims, Grandpre made clear that he did not want to tell the tier deputy the details of his condition. He instead insisted that the deputy tell the medical staff that he had an emergency. In response to his vague request, he was told to complete a medical care form in accordance with prison policy. He continued to insist that someone from the medical staff come to him for the unspecified emergency. Grandpre eventually decided to tell the deputy that he was bleeding rather than complete the necessary paperwork. After this pertinent information was relayed, he was treated by McLondon.

Under these circumstances, Grandpre has not, alleged that the deputies or McLondon acted with an intent to cause him injury or harm or that they ignored any known serious medical need when Grandpre withheld the pertinent information when making his request for care. Grandpre concedes that he did not initially tell the tier deputy what was wrong and did not submit the sick

call request form as instructed.   When he did finally disclose a real medical concern, he soon was seen by McLondon.

In addition, it is well settled that, where the prisoner's claim rests on a delay in treatment, that delay must result in substantial harm to be entitled to relief under § 1983.   *See Mendoza*, 989 F.2d at 195.   In this case, Grandpre has not alleged a harm, much less a substantial harm, resulting from the delay in responding to his request for care.   Any delay in the situation he described was not intentional indifference to a known and serious medical need and did not result in any specified harm.

For the foregoing reasons, Grandpre's § 1983 claims of medical indifference against McLondon are frivolous and otherwise fail to state a claim for which relief can be granted.   The claims against McLondon should be dismissed pursuant to § 1915, § 1915 and § 1997e.

### b.   <u>Failure to Intervene</u>

Grandpre also claims that McLondon saw him being choked by Deputy A. Siv and did not intervene.   As outlined previously, Grandpre alleges that this occurred when he announced to the nurses in the medical unit that Deputy Siv "hit like a bitch" and the deputy in turn grabbed him by the throat.

The law provides that prison officials have a duty to protect prisoners from violence at the hands of other prisoners or from prison officers or officials.   *Cantu v. Jones*, 293 F.3d 839, 844 (5th Cir. 2002) (citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)).   A prison official is deliberately indifferent to the inmate's safety if the official knows that the inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it.   *Farmer*, 511 U.S. at 847.

This standard also applies to a prison official under a theory of bystander liability, or failure to intervene, theory if he or she is "present at the scene and does not take reasonable measures to protect [an inmate] from another officer's use of excessive force."   *Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995).   However, an official's "mere presence is not enough, and . . . an officer must have a reasonable opportunity to realize the excessive nature of the force and a realistic opportunity to stop it for the duty to intervene to arise."   *Malone v. City of Ft. Worth*, No. 09-CV-634, 2014 WL 5781001, at *19 (N.D. Tex. Nov. 6, 2014) (citing *Hale*, 45 F.3d at 919).

In this case, however, Grandpre asserts the bystander liability claim against a nurse, not a correctional officer or prison official.   The bystander liability imposed upon of a corrections officer is based on the officer's law enforcement position, where he or she is sworn to uphold the law and authorized to use force when necessary.   *See Smith v. Mensinger*, 293 F.3d 641, 650 (3d Cir. 2002).   However, where the defendant is a medical professional, and not a correctional officer, no such special duty exists, and an inmate may not sustain a failure to intervene claim. *Rogers v. Buchanan*, No. 12-cv-2458, 2015 WL 3439145, at *11 (N.D. Tex. Mar. 27, 2015), *report adopted*, 2015 WL 3504518, at *1 (N.D. Tex. May 28, 2015); *see also*, *Ali v. McAnany*, 262 F. App'x 443, 446 (3d Cir. 2008) (affirming dismissal of an inmate's claim against a nurse for failing to intervene in a correctional officer's use of force because "she [was] not a corrections officer and thus did not have a duty to intervene…").

The law does not clearly support a claim of this nature against McLondon.   Even if it were extended to include her as a health care provider, Grandpre has not alleged that she had an opportunity or realistic ability to stop Deputy Siv, or that Deputy Siv's use of restraint was unconstitutionally excessive under the circumstances.   Thus, Grandpre's claim is legally frivolous and otherwise fails to assert facts sufficient to state a claim of bystander liability against

McLondon.   The claims against McLondon should be dismissed pursuant to § 1915, § 1915A and § 1997e.

### 4.      Claims against LRN Toni Carter

Grandpre alleges that LRN Toni, identified by him at the *Spears* Hearing as Toni Carter, did not record all of his complaints when she examined him on April 25, 2015, after he allegedly was cut by LRN James and beaten by officers.   He also claims that she too witnessed Deputy Siv choke him in the medical unit and failed to intervene.

With respect to the nurse notes, Grandpre has not alleged with any specificity, even at the *Spears* Hearing, what complaints were left out of Carter's notes or what impact any incomplete notes had on his medical care.   He also does not assert that any omissions were made intentionally or for the purpose of denying him necessary medical care.   His conclusory claims are insufficient to state a non-frivolous claim against Carter.   *Accord Williams*, 671 F.2d at 901 ("mere negligence in giving or failing to supply medical treatment would not support an action under Section 1983).

His also asserts the same claims against Carter as he did McLondon for the failure to intervene when Deputy Siv allegedly choked him in the medical unit.   For the same reasons addressed above as to McLondon, Grandpre has failed to state a non-frivolous claim against Carter arising from that incident.   His claims against Carter should be dismissed pursuant to § 1915, § 1915A, and § 1997e.

### 5.      Claims Against LRN James

Grandpre alleges that Nurse James cut his foot with a flashlight on April 25, 2015. Grandpre alleges, as further explained at the *Spears* Hearing and in the supplemental complaint, that the Nurse used a flashlight with sharp points to conduct a "Babinski" test to determine whether Grandpre was hurt by his fall and able to stand up.   The Babinski procedure is a clinical test used

to identify upper motor neuron disease in which the examiner runs a blunt instrument such as the metal edge of a neurologic hammer, fingernail, or pen, over the plantar surface of the foot from the calcaneus, and along the lateral border of the foot to the forefoot.[18]   Grandpre claims that Nurse James pressed too hard on his foot with the flashlight to conduct the test and Grandpre tried to pull his foot away, despite the fact that the deputies were holding him down.   Nurse James told him to stop moving but Grandpre did not because it hurt.   During the test, Grandpre claims Nurse James doubted that he was injured and used the test in an effort to prove Grandpre was not hurt. In addition, Nurse James cut the skin of his foot, causing his foot to bleed.

Grandpre's claim is not that he was denied medical care by Nurse James, but instead is that the medical care provided caused him injury.   Grandpre, under a broad reading, asserts that Nurse James intentionally cut his foot to prove that he was not injured in the fall.   He claims that Nurse James did not properly conduct the Babinski test and used too much pressure with the sharp edge of the flashlight.

For the Nurse James's medical treatment to have amounted to a constitutional violation, Grandpre must allege that he acted with deliberate indifference that constituted the "'unnecessary and wanton infliction of pain.'"   *Estelle*, 429 U.S. at 104.   Grandpre does not specifically allege that LRN James intended to injure him; instead he asserts that LRN James's actions resulted in cuts on his foot.

The Court notes that defendant CorrectHealth attached copies of Grandpre's medical records to its responsive pleading.   While the Court's frivolousness review is generally limited to review of the original and supplemental complaints, as amended by the *Spears* Hearing, it is also a fact that "[m]edical records of sick calls, examinations, diagnoses, and medications may rebut

---

[18]http://www.emergencymedicalparamedic.com/; http://www.emergencymedicalparamedic.com/ .

an inmate's allegations of deliberate indifference."   *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995); *Mendoza v. Lynaugh*, 989 F.2d 191, 193-95 (5th Cir. 1993).

In this case, the records establish that a Babinski procedure was conducted on Grandpre by a nurse at the prison with the scrawled initials appearing to be "JW, R.N." or similar.[19]   The records also support Grandpre's claim that his foot was cut on or about April 25, 2015 during an altercation with prison officials.   Notes written by a different nurse, C. Bradley, LPN, that same day indicate that Grandpre complained of falling, "foot bleeding," and being beaten by deputies. Her notes indicate "2 cuts to bottom of foot, blood dripping from nose."[20]   The records do not indicate that the cuts on Grandpre's foot actually were bleeding.   Nurse Bradley wrote that "cuts on bottom of footed cleaned [with] sterile water, applied [triple antibiotic ointment] and covered [with] gauze and tape."[21]

To establish indifference regarding medical care, a plaintiff must show that the official "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Domino v. Texas Dept. of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001) (citing *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985)).   However, even where indifference may be found, the resulting injury must be more than *de minimis* for the plaintiff to state a claim.   *Earl v. Dretke*, 177 F. App'x 440, 441 (5th Cir. 2006) (citing *Flores v. City of Palacios*, 381 F.3d 391, 398 n.6 (5th Cir. 2004)).

---

[19]Rec. Doc. No. 6-3, p. 111, Progress Notes, 4/25/15.

[20]Rec. Doc. No. 6-3, p. 98, Nursing Assessment Protocol Note, General Complaint, 4/25/15.   This note bears two dates, April 25, 2015, and April 26, 2015.

[21]*Id*.

A small open cut is not the sort of wound which would normally create a substantial risk of serious harm. *Jackson v. Boland*, No. 12-CV-0212, 2014 WL 947567, at *16 (N. D. Tex. Mar. 11, 2014) (citing *Alvarado v. Battaglia*, 539 F. Supp. 2d 1022, 1027-1028 (N.D. Ill. 2008); *Jones v. Lindblad*, No. 05-CV-814, 2009 WL 804155, at *6-7 (W.D.N.Y. Mar. 25, 2009)). The courts therefore do not consider minor cuts to be more than *de minimis*. *Luong v. Hatt*, 979 F. Supp. 481, 486 (N.D. Tex. 1997); *see also*, *Siglar v. Hightower*, 112 F.3d 191 (5th Cir. 1997). Instead, in determining the nature of the wound, the courts look to the level of treatment a "free world person" would seek and generally resolve that "[i]njuries treatable at home and with over-the-counter drugs, heating pads, rest, etc.," are not more than *de minimis* for purposes of § 1983. *Id*.

Based on the foregoing, Grandpre has not alleged more than a *de minimis* injury to his foot which he claims was caused by LRN James. The cuts were cleaned and dressed with no further treatment or ramifications resulting. The circumstances presented by Grandpre and the record do not amount to a constitutional violation. His claims against LRN James, therefore, are frivolous and otherwise fail to state a claim for which relief can be granted under § 1983. The claims should be dismissed pursuant to § 1915, § 1915A, and § 1997e.

### B.    Defendants' Motions to Dismiss (Rec. Doc. Nos. 6, 9, 10)

The Court has already addressed Grandpre's claims asserted against the defendants CorrectHealth, Kelly Harris, Cindi Lachney, Dana McLondon, Toni Carter, and LRN James. The Court has recommended that the claims against each of these defendants be dismissed as frivolous and otherwise for failure to state a claim for which relief can be granted pursuant to its statutory review above. The Court's findings and recommendations render the pending Motions to Dismiss (Rec. Doc. Nos. 6, 9, and 10) filed by the defendants to be **MOOT** and the motions should be dismissed for that reason.

## IV.    Recommendation

It is therefore **RECOMMENDED** that Grandpre's § 1983 claims against the defendants, CorrectHealth Jefferson, LLC, Cindi Lachney, Kelly Harris, Dana McLondon, LRN Toni, and LRN James, be **DISMISSED WITH PREJUDICE** as frivolous and otherwise for failure to state a claim for which relief can be granted pursuant to 28 U.S.C. § 1915, § 1915A, and 42 U.S.C. § 1997e.

It is further **RECOMMENDED** that the **Motion to Dismiss (Rec. Doc. No. 6)** filed by defendant CorrectHealth Jefferson, LLC, the **Motion to Dismiss (Rec. Doc. No. 9)** filed by the defendants LRN James, LRN Toni, and Dana McLondon, and the **Motion to Dismiss (Rec. Doc. No. 10)** filed by defendant Kelly Harris be **DISMISSED as moot** in light of the recommendation that the claims against these defendants be dismissed on other grounds.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[22]

New Orleans, Louisiana, this 29th day of August 2016.

_____

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

---

[22]*Douglass* referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.